## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALANN VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 4536 |
| | ) | |
| TERRY McCANN, OTHELLO L. HAMILTON, LIEUTENANT EDWARDS, DARYL JOHNSON, ANNA DOCKERY, AMI WORKMAN, SHERRY T. BENTON, and RODGER E. WALKER, JR., in their individual and official capacities, and LIEUTENANT JAMES BURZINSKI, LIEUTENANT ALSHEENA VAUGHN, and ED BUTKIEWICZ, in their individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Sheila Finnegan |
| Defendants | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Alann Vega is an inmate at Stateville Correctional Center in Joliet, Illinois ("Stateville"). He filed suit alleging that Defendants, all officials and employees of Stateville and the Illinois Department of Corrections, violated his constitutional due process and Eighth Amendment rights by administering a flawed drug test and then placing him in disciplinary segregation where he was exposed to unsanitary conditions. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Defendants now seek summary judgment based on Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons explained here, the Court cannot determine the issue of administrative exhaustion without holding a hearing in accordance

with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Defendants' motion for summary judgment is entered and continued pending that hearing.

## **BACKGROUND**

Plaintiff is currently serving a 35-year sentence at Stateville. On August 11, 2008, he filed a *pro se* complaint charging eight Defendants with violating 42 U.S.C. § 1983 by subjecting him to a faulty drug test. Plaintiff claimed that he falsely tested positive for marijuana in his system, resulting in six months of disciplinary segregation. He further alleged that four Defendants, Stateville Warden Terry McCann, Correctional Lieutenant James Burzinski, Correctional Lieutenant Alsheena Vaughn, and Correctional Counselor Edmund V. Butkiewicz, subjected him to cruel and unusual punishment based on the unsanitary conditions of his segregation. Specifically, Plaintiff claimed that: his cell did not have clean bedding or a pillow; his mattress was infested with bed mites; his cell had a broken window and mildew on the walls; he was given roach-infested food; he did not receive cleaning supplies or toiletries on a regular basis; and he was not allowed to exercise regularly or access materials from the law library.

On September 4, 2008, the district court dismissed Plaintiff's due process claim regarding the drug test, and allowed Plaintiff to proceed solely on his Eighth Amendment claim relating to the conditions of his confinement while in segregation. (Minute Order of 9/4/08, Doc. 5, at 2.) Plaintiff objected to the dismissal of all but Defendants McCann, Burzinski, Vaughn and Butkiewicz, but the court affirmed its decision and denied Plaintiff's request to reinstate the other named defendants. (Minute Order of 10/3/08, Doc. 12.)

Shortly thereafter, in January 2009, the district court appointed counsel to represent Plaintiff in this case. Plaintiff then filed a First Amended Complaint, reasserting two due

2

process claims along with his allegations of an Eighth Amendment violation. On March 23, 2009, the district court dismissed Plaintiff's claim that Defendants deprived him of a constitutionally protected liberty interest by administering a faulty drug test. *Vega v. McCann*, No. 08 C 4536, 2010 WL 1251444, at *2-3 (N.D. Ill. Mar. 23, 2010). The court also dismissed Plaintiff's request for an injunction "preventing Defendants from punishing inmates on the basis of a single, unconfirmed drug test." *Id.* at *3. Finally, the court held that Plaintiff may not recover damages for mental or emotional injuries. *Id.* at *3-4.

All that remains for consideration is Plaintiff's Eighth Amendment claim.[1] Defendants argue that this claim cannot proceed to the merits because Plaintiff failed to exhaust his administrative remedies as required by the PLRA. Plaintiff disagrees, insisting that he exhausted all administrative remedies that were available to him. The Court considers the arguments below.

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In viewing the facts presented on a motion for summary judgment, the court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *National Athletic Sportswear, Inc. v.*

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge on March 11, 2010, and the case was reassigned to this Court on April 26, 2010. (Doc. 82, 92.)

*Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear*, 528 F.3d at 512.

**A.     The Exhaustion Requirement**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has found "no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). *See also Fletcher v. Menard Correctional Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) ("Exhaustion is explicitly required by the Prison Litigation Reform Act.") This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). That said, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then "the administrative process . . . that exists on paper becomes unavailable in reality." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Kaba*, 458 F.3d at 684.

In Illinois, Grievance Officers are responsible for reviewing grievances on a weekly basis, and for submitting written findings and recommendations to their facility's warden.

20 Ill. Admin. Code §§ 504.820, 504.830. A grievance may go directly to the warden only if there is a risk of imminent injury or irreparable harm to the inmate. 20 Ill. Admin. Code § 504.840. Pursuant to the Stateville Offender Handbook, an inmate's grievance form "must be completed and signed by the offender and given to his counselor." (Doc. 113, at 9.) A Grievance Officer "will not accept grievances, other than those concerning discipline, unless signed by a member of the counseling staff," and "[t]he Administrative Review Board will not review issues that have not first been reviewed by the Grievance Officer." (*Id.* at 9-10.)

**B.     Plaintiff's Exhaustion Efforts**

Defendants acknowledge that Plaintiff filed a grievance on May 3, 2007, challenging the validity of his drug test. (Doc. 101, at 6; Doc. 100-1.) Defendants stress, however, that the grievance makes no mention of the conditions of Plaintiff's confinement in segregation. Plaintiff does not dispute this fact, but claims that he filed a separate grievance on or about April 2, 2007, complaining about the conditions he experienced in the segregation unit. In support of this position, Plaintiff submitted an affidavit stating that his April grievance, which he gave to his assigned counselor, Defendant Butkiewicz, expressly complained of accumulated feces in the toilet, bedbugs in the mattress and bedding, mildew on the walls, a broken window, and poor food quality resulting in significant weight loss and malnutrition. (Doc. 112, ¶¶ 1-3; Doc. 112-1, ¶¶ 1-3.) According to Plaintiff, he asked Counselor Butkiewicz about the status of his April grievance on several occasions between May and September 2007, and Counselor Butkiewicz told him that he would look into it. Eventually, however, Counselor Butkiewicz informed Plaintiff that he did not remember ever having received the grievance at all. (*Id.* ¶¶ 5, 6; Doc. 112-1, ¶¶ 5, 6.)

5

Plaintiff says that he pursued the matter with Counselor Butkiewicz's supervisor, head counselor "Stan," asking him to instruct Counselor Butkiewicz to address the April grievance. Stan never responded to Plaintiff's request forms, leaving Plaintiff without a counselor's signature and, thus, unable to file a report with a Grievance Officer. (*Id.* ¶¶ 7-9; Doc. 112-1, ¶¶ 7-9.) Plaintiff explains that he does not have a copy of the April grievance himself because he did not have access to a copying machine in segregation. (*Id.* ¶ 10; Doc. 112-1, ¶ 10.)

Defendants dispute that Plaintiff gave Counselor Butkiewicz a grievance in April 2007, much less one addressing the conditions of his confinement. In support of this position, Defendants have submitted Plaintiff's Cumulative Counseling Summary ("CCS"), which documents his interactions with correctional counselors. They have also submitted an affidavit from Counselor Butkiewicz confirming that the CCS accurately reflects all of his contacts with Plaintiff between March and November 2007. According to Counselor Butkiewicz, Plaintiff's only requests during that period were for (1) a "seg pen" (an ink pen approved for use by inmates housed in segregation units); (2) a "seg cut" (an application for a reduction in segregation time; (3) legal papers and books; (4) envelopes; (5) religious books; (6) money vouchers; (7) a "seg outdate"; (8) a clothing slip; (9) a non-smoking status check; (10) a commissary price list; and (11) copies of a March disciplinary ticket. (Doc. 125-1, ¶ 7.) Counselor Butkiewicz insists that he has never ignored, lost or destroyed Plaintiff's grievances and has no recollection regarding any April 2007 complaint. (*Id.* ¶ 8.)

Defendants ask the Court to accept Counselor Butkiewicz's representations and disregard Plaintiff's "self-serving manufactured affidavit." (Doc. 126, at 1.) "[S]elf-serving affidavits can be used in opposition to motions for summary judgment provided that they

6

meet the usual requirements, such as being based on personal knowledge and setting forth specific facts showing that there is a genuine issue for trial." *McGowan v. Deere & Co.*, 581 F.3d 575, 580 (7th Cir. 2009). Here, Defendants have not given the Court any basis for accepting Counselor Butkiewicz's affidavit in full and rejecting Plaintiff's affidavit. Notably, there is an arguable inconsistency between Counselor Butkiewicz's assertion that between March and November 2007, "my notes indicate [Plaintiff] did not submit or raise any concerns regarding grievances," and the undisputed fact that Plaintiff filed a grievance on May 3, 2007. (Doc. 125-1, ¶ 7.)

Defendants suggest that the CCS provides objective support for Counselor Butkiewicz's version of events, noting that an entry dated September 10, 2008 shows that Plaintiff asked Counselor Butkiewicz for a copy of his May 3, 2007 grievance, and that Counselor Butkiewicz sent it to him. (Doc. 125-1, at 3.) In Defendants' view, "[i]t defies belief that Plaintiff's counselors would document other grievance issues and other non-grievance issues, yet fail to address and document the phantom April 2007 grievance." (Doc. 126, at 3.) The problem is that the CCS does not actually document Plaintiff's submission of a grievance on May 3, 2007, but merely reflects that Plaintiff asked for a copy of it more than a year later. This leaves open the possibility that Plaintiff also filed a grievance in April 2007 and requested a copy of it, and that Counselor Butkiewicz never followed through. Resolution of this matter inevitably turns on the credibility of both affiants.

Faced with one party's word against another as to the existence of an April 2007 grievance, the Court must hold a hearing in accordance with *Pavey v. Conley*, 544 F.3d

7

739 (7th Cir. 2008), in order to determine whether Plaintiff exhausted his administrative remedies.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment [Doc. 99] is entered and continued pending a *Pavey* hearing. Status hearing is set for January 12, 2011, at 9:30 a.m. to discuss the logistics and scope of the *Pavey* hearing.

ENTER:

Dated: January 4, 2011

_____
SHEILA FINNEGAN
United States Magistrate Judge